HORACE P. RUGG *vs.* MARTIN HOOVER and others.

November 11, 1881.

**Mechanic's Lien—Insufficient Affidavit.**—A mechanic's lien, being the creature of the statute, can only exist by virtue of a compliance with its provisions. The verified statement of account filed in the office of the register of deeds as the basis for a mechanic's lien in this case examined, and *held* to be too loose, indefinite and ambiguous, as respects the ownership of the property on which the lien was sought to be imposed, to satisfy the requirements of the statute.

Appeal by plaintiff from an order of the district court for Polk county, *Stearns,* J., presiding, sustaining a demurrer to the complaint.

*Halvor Steenerson,* for appellant.

*Davis Brower* and *R. Reynolds,* for respondents.

CLARK, J. This action was brought to enforce a mechanic's lien for mill supplies and machinery furnished by the plaintiff for the construction and repair of a mill. The complaint alleges that in October, 1878, the plaintiff, by virtue of a contract with the defend-

ant Hoover, sold and delivered to him certain mill supplies, machinery and materials, for the construction and repair of a saw and flouring-mill, situated on lots 1, 2, 3, and 4, in block 38, and a fractional lot between said block and the Red Lake river, in the town-site of Crookston, in Polk county; that Hoover was, at the time of the making of the contract of sale and the delivery of the supplies, machinery and materials thereunder, and at the time of the filing for record of the verified account hereinafter mentioned, the owner of the mill, and was in possession of the lots under a contract for the purchase thereof from the defendant Bly, who held the legal title thereof, as well as of a large amount of adjoining property, and had agreed to convey these lots to Hoover in consideration of his constructing such mill thereon; and that on the 28th day of August, 1879, the plaintiff filed for record in the office of the register of deeds of Polk county a duly verified and itemized account of such supplies, mach nery and materials, a copy of which was annexed to the complaint, and made part thereof, and is, omitting the statement of items and the jurat, as follows:

"H. P. Rugg, being first duly sworn, doth say that his business is that of dealer in and furnisher of railway and mill supplies; that at various times, and between the sixteenth and twenty-second days of October, 1878, he did, at the request of one Martin Hoover, furnish and deliver unto said Hoover, for the furnishing, equipping or repairing of his mill at Crookston, in the county of Polk and state of Minnesota, which mill is situate upon lands in said county of Polk, described as lots 1, 2, 3, and 4, in block 38, town-site of Crookston, on the south-west quarter of section 30, in township 150, range 46, certain mill supplies, furnishings and material, of which the account hereto annexed and marked Exhibit A is a true and correct statement and account, worth and of the value of, in the aggregate, the sum of $139.28, which sum said Hoover agreed to pay therefor, with interest thereon, at the rate of 12 per cent. per annum, from November 22, 1878; that no part of said account and claim has been paid; that all of said materials and furnishings have been supplied within one year last past; that said claim is held and owned by this affiant; that it is in no way secured; and that this

affidavit is made for the purpose of asserting a lien upon said property, and upon said furnishings and supplies, as is provided by law."

The complaint further alleges that on the 10th day of November, 1879, Hoover conveyed and transferred to the defendant Chase the said mill, and all his interest and equities in the lots, and Chase went into possession thereof; that on the 29th day of March, Bly conveyed the legal title of the lots to Chase; and that on the 14th day of May, 1880, Chase conveyed the premises to the defendant Ritchie, and took back a mortgage from him to secure the payment of part of the purchase-money; and that Ritchie went into possession and still remains in possession thereof.

The defendants Bly, Chase and Ritchie demurred to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action against them, and the case comes to this court upon an appeal from an order sustaining such demurrer. In disposing of the appeal, it will only be necessary to consider the sufficiency of the affidavit annexed to the account of items filed in the register of deeds' office, and above set forth.

The statute gives a lien for the price of materials and machinery furnished for the construction or repair of a building, by virtue of a contract with the owner thereof, upon the building, and all the right, title and interest of the owner of the building in and to the land upon which it is situated, with certain limitations as to quantity. Gen. St. 1878, c. 90, § 1. Section 7 provides that the account therein mentioned, verified and filed, as therein prescribed, shall "operate as a lien upon the several descriptions of structures and buildings, and upon the lots of ground upon which they stand." Section 10 provides for enforcing the lien where the party erecting the building, as owner, has only an equitable title to the land; and section 18 prescribes a form which may be used for the verification of the account to be filed in the register of deeds' office, which, as respects ownership of the property upon which the lien is claimed, is as follows: "That the said C. D. was, at the time said contract was entered into, and said labor was performed, and said materials (or say machinery) were furnished, the owner of house, (or say mill, or say said manufactory,

naming the kind of building;) and that said building is situate upon a certain lot of land owned by said C. D.," etc.

It is said in argument that the statute relating to mechanics' liens is remedial, and should, therefore, be liberally construed. It is true that the statute gives a security where none existed before; but the lien, being the creature of the statute, can only exist in virtue of a compliance with its provisions. Whatever is necessary to the existence of the lien must be fulfilled, or the attempt to create it will be futile. The statute should be fairly and reasonably construed and applied, so as to afford the security intended, upon a substantial compliance with its requirements, and at the same time afford reasonable protection to the rights of other parties who may have acquired an interest in the property. The filing for record of the verified statement operates as the creation of the lien, and, at the same time, as notice of its existence to all persons interested in the property upon which it is imposed, or who may become so thereafter, during the life of the lien, and their rights are affected accordingly. It should, therefore, show facts enough to fulfil the statutory requirements for a lien. The form given in the statute confirms this view of its purpose. One of the essentials for a lien in this case is that the materials shall be furnished by virtue of a contract with the *owner* of the building or his agent, and the lien is imposed not only on the building, but upon all the right, title and interest of the owner thereof in the land on which it is situated; and the form of affidavit prescribed contains an allegation not only of the ownership of the building by him, but of the land also.

Turning now to the affidavit in this case, it contains no statement whatever as to the ownership of the land on which the mill is situated. Ordinarily a building is a part of the realty. A separate ownership cannot well exist without some contract with or license from the owner of the land. There must be at least the right to enter upon the land for the purpose of removing it. The affidavit is silent as to the relation of Mr. Hoover to the land. If it should be conceded that no statement of the facts in this regard is necessary, and that a mere statement of ownership of the building by the vendee of the materials is sufficient, still there is no direct, unequivocal allegation

as to the ownership of that. The only word in the affidavit that could, by possibility, be construed to imply ownership is the word "his," used in a clause describing or identifying the building. This word may imply ownership, or mere possession or occupancy, or some other relation to the person. As was remarked by the court below, it is often used with reference to relationships of persons to things other than the relation of ownership. It is impossible to say that its use, in the connection in which it is used in this affidavit, is a substantial equivalent for an allegation of ownership. It is further to be noticed that, to create a lien for materials furnished for a building, the first section requires them to be furnished under a contract with the owner of the building; and the form prescribed in the eighteenth section contains a statement of the ownership by him at the time the contract was made and the material furnished. It would be carrying construction to a great extreme to make the language used in the affidavit revert to that time. Upon the whole, we are of opinion that the affidavit is too loose, indefinite and ambiguous, with respect to the matter of the ownership of the mill and lots, to meet the requirements of the statute, and that the demurrer was, therefore, properly sustained.

Order affirmed.